[Cite as *RRL Holding Co. of Ohio, L.L.C. v. Stewart*, 2020-Ohio-199.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| RRL Holding Company of Ohio, LLC et al., | : | |
| Plaintiffs-Appellees, | : | |
| v. | : | No. 19AP-202 |
| | | (C.P.C. No. 15CV-1842) |
| Merrilee Stewart, | : | |
| Defendant-Appellant, | : | (REGULAR CALENDAR) |
| TRG United Insurance, LLC, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on January 23, 2020

**On brief:** *Shumaker, Loop & Kendrick, LLP, James R. Carnes*, and *Matthew T. Kemp*, for appellees. **Argued:** *Matthew T. Kemp.*

**On brief:** *Merrilee Stewart*, pro se. **Argued:** *Merrilee Stewart.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Merrilee Stewart, has filed this appeal of the March 15, 2019 decision and entry of the Franklin County Court of Common Pleas overruling appellant's objections to the magistrate's decision of December 21, 2018 and denying appellant's motion for sanctions on Fritz W. Griffioen and Attorney James R. Carnes, Esq., and adopting the same magistrate's decision. The notice of appeal addresses as well the court's May 17, 2017 decision and entry overruling appellant's objections to the magistrate's decision of February 13, 2017 and adopting the same magistrate's decision. These decisions originate from the court's November 7, 2016 decision and entry. The November 7, 2016

decision and entry and the May 17, 2017 decision and entry are now final and appealable with the filing of the March 15, 2019 decision and entry. With these decisions, upon the August 10, 2016 motion to show cause filed by plaintiffs-appellees RRL Holding Company of Ohio, LLC ("RRL") and IHT Insurance Agency Group, LLC ("IHT") (collectively "appellees"), the court found appellant to be in contempt of court and imposed sanctions and attorney fees for the same. For the following reasons, we reverse in part, render moot in part, and remand with instructions.

## I. Facts and Procedural History

### A. Context of Appeal

{¶ 2} The context of this appeal involves a dispute between the members of a limited liability company, RRL.[1] RRL wholly owned and was the sole member of IHT.[2] Appellant is listed as one of five members of RRL, each owning equal shares, named in amendments to the operating agreement of RRL ("Operating Agreement") and in a September 5, 2012 buy/sell agreement of RRL ("Buy/Sell Agreement"), along with William Griffioen, Fritz Griffioen, and Rodney Mayhill (collectively "remaining members") and Norman L. Fountain.[3] Whether appellant remains a member and owner of RRL is a subject of the dispute. Until the dispute between the members of RRL arose, the members also served as officers and on the board of managers for IHT. In their complaint, appellees state that appellant served as an officer of IHT until October 2014 and on IHT's board of managers until December 20, 2014.

{¶ 3} On March 2, 2015, appellees filed a complaint against appellant alleging she had formed a new company, TRG United Insurance, LLC ("TRG"), which operated in violation of a non-compete provision included in the Buy/Sell Agreement. The complaint further alleged that TRG was using as its headquarters the same address as IHT and the resources and staff of IHT to operate TRG. In October 2014, the remaining members voted

---

[1] Appellees informed the court that, in December 2018, RRL merged with Firefly Insurance Agency ("Firefly") and that Firefly is the successor to RRL. For purposes of this appeal, however, we will refer to RRL, rather than Firefly, to reflect the name of the entity during the period of time relevant to this appeal.

[2] Appellees informed the court that IHT is now known as Firefly. For purposes of this appeal, however, we will refer to IHT, rather than Firefly, to reflect the name of the entity during the period of time relevant to this appeal.

[3] Fountain subsequently redeemed his membership interest and is no longer a member of RRL.

to suspend appellant from her position with IHT and, in December 2014, the remaining members and appellant attempted to negotiate redemption of appellant's interest in RRL pursuant to the Buy/Sell Agreement. On December 30, 2014, notice was provided to appellant that she had been removed from RRL and her relationship with IHT had been terminated. The complaint alleged breach of fiduciary duties, negligence, conversion, defamation/libel/slander, replevin, and requested a preliminary injunction. Appellees also filed a separate motion for preliminary injunction.

{¶ 4} Appellant moved to dismiss the complaint. Appellees amended their complaint on May 4, 2015, supplementing the general allegations and deleting the claims of negligence and defamation/libel/slander. The trial court denied appellant's motion to dismiss on May 28, 2015 finding the amended complaint had cured the deficiencies of the original complaint which appellant alleged in her motion.

{¶ 5} Appellant filed an answer and counterclaim to the amended complaint on May 18, 2015. In her counterclaim, appellant alleged the remaining members did not follow the requirements of the Operating Agreement and Buy/Sell Agreement to remove her as a member. She alleged several counts of breach of contract relating to the Operating Agreement, health insurance, commissions and life insurance, several counts of promissory estoppel relating to health insurance, commissions and life insurance, and one count of defamation. Appellant also filed a memorandum contra to the motion for preliminary injunction. Appellees filed a reply to the counterclaim on June 12, 2015.

{¶ 6} Relevant to this appeal, on May 28, 2015, the parties filed an agreed entry as to appellees' motion for preliminary injunction ("Agreed Entry"), and appellees withdrew their previously filed motion for preliminary injunction. The issues before this court today involve compliance with the Agreed Entry. The specific terms of the Agreed Entry will be discussed forthwith.

{¶ 7} On July 20, 2015, appellees moved to compel arbitration and stay litigation pursuant to the parties Buy/Sell Agreement. Appellant filed a memorandum contra on August 13, 2015. On November 10, 2015, the court ordered the parties submit their affirmative claims against each other and defenses to binding arbitration and stayed claims against TRG, including TRG's defenses pending resolution of the arbitration process.

## B. Appellees' August 10, 2016 Motion to Show Cause

{¶ 8} On August 10, 2016, appellees filed one of numerous motions over the history of this case for an order to show cause as to why appellant should not be held in contempt of court for violating the terms of the Agreed Entry. The court's ruling on the August 10, 2016 motion to show cause is the narrow subject of this appeal.[4] As relevant here, the Agreed Entry provides:

> NON-AFFILIATION
>
> I. Defendants Stewart and TRG, agree to refrain from:
>
> a. representing to any person, business, or entity that Defendants are employees, agents, authorized representatives, producers, officers, managers or doing business as, or in any way working with or for, Plaintiffs IHT or RRL;
>
> b. making any representation that TRG is located at, or operating or doing business from IHT or RRL's offices at 6457 Reflections Drive, Dublin, OH 43017, or
>
> * * *
>
> d. representing to any person, business, or entity that Defendant Stewart has any authority to enter into any business arrangements, agreements, contracts, or transactions that in any way affects IHT or RRL.

(Agreed Entry at 2-3.)

{¶ 9} The Agreed Entry also provided for: (1) preservation of appellant's data and information from her IHT e-mail and telephone; (2) appellant refraining from accessing, transferring, moving, or changing any IHT financial account with any financial institution;

---

[4] Although in responding to the August 10, 2016 motion before the trial court, as well as in her briefing before this court, appellant argued the merits of her counterclaim and appellees' amended complaint, we decline to address the merits of the counterclaim and amended complaint as that was the subject of arbitration. Furthermore, we do not address the trial court's rulings also included in the March 15, 2019 decision and entry: (1) granting motion of appellees to show cause filed March 7, 2018, (2) denying appellant's motion to show cause filed March 20, 2018, (3) denying as moot appellant's motions to stay filed March 11, and October 26, 2018, (4) granting motion of appellees to show cause filed January 11, 2019, and (5) denying appellant's motion for sanctions on Fritz and Carnes filed January 27, 2019. Furthermore, as explained later in our discussion regarding the seventh assignment of error, parts (A) and (B), we decline to address the court's decision denying appellant's motion for sanctions filed September 18, 2017. The court denied this motion on December 12, 2017.

(3) appellant not engaging in solicitation for purposes of establishing business relationships to sell or provide any insurance coverage unless appellant was the identified producer while working at IHT and not sharing or using IHT's trade secrets or confidential business information; and (4) appellees agreeing to forward to appellant her mail and e-mail that is not related to IHT or RRL customers or business operations.

{¶ 10} Appellees claimed appellant violated the Agreed Entry by claiming to be an owner and authorized agent of IHT and RRL to: (1) the Ohio Civil Rights Commission ("civil rights commission"); (2) the Columbus Police Department ("police"); (3) Hartford Insurance ("Hartford"); and (4) Liberty Mutual Insurance ("Liberty") (collectively "insurance companies"). Appellant filed a memorandum contra claiming the Agreed Entry was moot "given the *dismissal* of this matter pending arbitration," and because "[t]his action is no longer pending with respect to the claims ordered to arbitration." (Emphasis added.) (Aug. 24, 2016 Memo. Contra at 3, 5.) In the alternative, appellant argued, assuming, arguendo, that the Agreed Entry is still in effect, she did not violate the spirit or intent of the Agreed Entry as it was intended to address business interests. Appellant argued her communications as alleged by appellees have nothing to do with the business associations and relationships between and among her and appellees. Specifically, appellant argued: (1) the claim of discrimination she filed with the civil rights commission is not in violation of the Agreed Entry and, if it were, that would preclude her from filing a counterclaim in the arbitration; (2) the report filed with police involved alleged embezzlement in the form of unpaid agent commissions which occurred between May 1, 2005 and May 1, 2015 before the Agreed Entry was entered and, therefore, explains that appellant was working with IHT at the time of the reported embezzlement; and (3) the claims filed with the insurance companies are not for the purposes of engaging in competition or engaging in a business transaction on behalf of appellees; rather, appellant is reporting her interest in appellee to support her allegations of embezzlement and fraudulent concealment in unpaid agent commissions. Appellees filed a reply memorandum.

**C. Appellant's August 24, 2016 Motion to Show Cause and Request for Sanctions, and Appellees' Request for Sanctions and Attorney Fees for Having to Respond to the Same**

{¶ 11} In addition to her memorandum contra appellees' August 10, 2016 motion to show cause, on August 24, 2016, appellant filed a motion to compel appellees to file arbitration and a motion to show cause why they should not be held in contempt for willfully failing to comply with the court's November 10, 2015 entry ordering the parties to submit their affirmative claims and defenses to binding arbitration. Appellant noted appellees moved for arbitration in the first place, and as of August 24, 2016 had not yet filed any proceeding with the American Arbitration Association ("AAA"). On August 31, 2016, appellees filed a memorandum contra which provided a detailed outline of appellees' efforts to comply with the order and begin the arbitration process. Appellees argued that appellant, her frequent changes in representation, and the inaction of her various attorneys were to blame for the delay. Appellees requested appellant be sanctioned and be required to pay attorney fees which appellees incurred in responding to the motion to compel arbitration. Appellant filed a reply arguing appellees did not pursue arbitration with AAA but, rather, proceeded as if they were only required to have the arbitration conducted pursuant to AAA rules. According to appellant, on August 2, 2016, appellees agreed to AAA arbitration and to file within the next week, but had neglected to file anything with AAA as of September 6, 2016. Appellant requested attorney fees incurred by her in filing the motion to compel arbitration. Appellees filed a supplemental memorandum in support of their request for sanctions stating they had agreed to AAA arbitration "despite there being no requirement to do so." (Footnote omitted.) (Oct. 21, 2016 Supp. Memo. in Support of Mot. for Sanctions at 2.) Appellees further stated they had submitted a demand for arbitration to AAA on September 8, 2016, that appellant's counsel indicated he would advise appellant to withdraw her motion to compel arbitration, and he would be in touch the following Monday. Appellees finally stated that appellant's counsel did not follow up and appellant did not withdraw her motion despite knowledge it was moot. Appellees again requested attorney fees.

{¶ 12} On October 27, 2016, appellant withdrew her motion to compel arbitration but did not withdraw her motion to show cause why appellees should not be held in contempt for failing to abide by the November 10, 2015 entry. Appellant also stated that appellees' initial demand for arbitration with AAA did not move forward because it was

deficient and it was not until October 11, 2016 that appellant received a notice from AAA that the filing requirements had been met.

**D. The Magistrate's and Court's Rulings on Appellees' August 10, 2016 Motion to Compel; Appellant's August 24, 2016 Motion to Compel and Request for Sanctions; and Appellees' August 31, 2016 Request for Sanctions and Attorney Fees in Responding to Appellant's August 24, 2016 Motion to Compel**

### 1. Court's initial finding of violation

{¶ 13} On November 7, 2016, the trial court filed a decision and entry: (1) granting appellees' motion to show cause why appellant should not be held in contempt for violating the Agreed Entry; (2) denying appellant's motion to compel arbitration and motion to show cause why appellees should not be held in contempt for violating the November 10, 2015 entry ordering arbitration;[5] and (3) granting appellees' motion for sanctions and attorney fees incurred in having to respond to appellant's motion to compel arbitration and motion to show cause.[6]

{¶ 14} The court first determined the Agreed Entry was not moot. The court then determined appellees' motion for an order to show cause why appellant should not be held in contempt was well-taken. The court agreed that appellant had violated the terms of the Agreed Entry as follows:

> The first alleged violation involves a claim and appeal which Stewart filed with the Ohio Civil Rights Commission. Exhibit A to Plaintiffs' motion is a Letter of Determination upon Reconsideration which sets forth Stewart's claim that she was treated unfairly by Plaintiff's as a result of her gender and religion. The Commission notes in its Letter: "Although her charge alleges that she was constructively discharged, she now denies this in her request for reconsideration, claiming that 'I am now and remain a member/owner' of Respondent [IHT].' " For the second violation, Plaintiffs cite to a report Stewart filed with the Columbus Police Department. (Motion, Ex. B). On July 27, 2016, Stewart reported that she, as a representative of IHT, was the victim of a $5-10 million embezzlement scheme orchestrated by IHT's human resources manager. Finally, as to

---

[5] Appellant does not address this ruling in her assignments of error and, therefore, we will not address the same.

[6] Appellant does not address this ruling in her assignments of error and, therefore, we will not address the same.

the third and fourth violations, Plaintiffs submit a series of emails between Stewart and Plaintiffs' insurance carriers, in which Stewart seeks compensation for employee dishonesty through Plaintiffs insurance policies (Motion, Ex. C).

The Court agrees that each of these actions violated the terms of the parties' May 28, 2015 Agreed Entry.

(Nov. 7, 2016 Decision & Entry at 4-5.)

{¶ 15} Next, the trial court considered the timeline presented by appellees regarding their efforts to begin the arbitration process and noted appellant did not dispute the same. The court concluded: (1) appellees had been attempting for many months to pursue arbitration and that appellant was in fact the dilatory party, and (2) the parties Buy/Sell Agreement did not require the parties to request arbitration through AAA. The trial court accordingly denied appellant's August 24, 2016 motion to compel and request for sanctions. It also found to be well-taken appellees' request for sanctions against appellant and her counsel and for attorney fees incurred in having to respond to appellant's motion to compel and motion to show cause. The court noted appellees agreed to AAA arbitration despite no contractual obligation to do so and that appellant and her counsel never withdrew the motion to compel even though counsel indicated he would advise appellant to withdraw the motion.

{¶ 16} Finally, the court referred appellees' motion to show cause to a magistrate and ordered appellant to appear and show cause why she should not be held in contempt of court for violating the Agreed Entry as appellees alleged in their August 10, 2016 motion. The court indicated that at the show cause hearing it would consider the appropriate sanctions against appellant for the filing of the motion to compel arbitration and motion to show cause.

### 2. **Magistrate's February 8, 2017 hearing, February 13, 2017 decision, and trial court's May 17, 2017 overruling of objections and adopting the magistrate's decision**

{¶ 17} On February 8, 2017, the magistrate held a show cause hearing. On February 13, 2017, the magistrate filed a decision recommending appellant be held in contempt of court and that sanctions be imposed. The magistrate found as follows: (1) the civil rights commission dismissed appellant's claim based on appellant's statement that "I

am now and remain a member/owner of IHT," appellant denied she made that statement, and the magistrate found the denial to be unavailing as appellant had been sent a copy of the civil rights commission's dismissal letter based on the same statement and she did nothing to object to the civil rights commission's assertion (Feb. 13, 2017 Mag. Decision at 1.); (2) the police report listed IHT and IHT's address as the victim of alleged embezzlement, appellant claimed the officer taking the report erroneously entered IHT as the victim and that she had not seen the report, and the magistrate found appellant's explanation as not worthy of belief as appellant did nothing to clear up the error, gave the police report number to a Columbus Dispatch reporter, and a person claiming to be a victim of $5-10 million dollars would have followed-up with police to see how the claim was progressing; (3) appellant claimed she filed claims with the insurance companies on the advice of counsel, however, the attorney upon whose advice appellant claimed to have relied did not appear at the hearing, and the magistrate found that reliance on the erroneous advice of counsel is not an excuse for violating the Agreed Entry; and (4) appellant has not demonstrated sufficient factual or legal reasons why she should not be held in contempt of court for her actions. The magistrate recommended that appellant should be allowed to purge her contempt by compensating appellees for the legal fees incurred in prosecuting the contempt action.[7]

{¶ 18} Appellant filed the following objections to the magistrate's decision on February 27, 2017: (1) the Agreed Entry does not prohibit appellant from representing herself as a "member" or "owner" and whether she is a "member" or "owner" is the subject of adjudication in the arbitration; (2) appellant did not violate the spirit of the Agreed Entry which is to prohibit appellant from holding herself out to third parties as having authority to transact the business of RRL or IHT; (3) the court was required to hold a hearing pursuant to R.C. 2705.02(A); (4) prior to adjudicating appellant to be in contempt of court in its November 7, 2016 entry, the court erred in not permitting appellant to present evidence or argument or to rebut the court's preliminary adjudication of contempt; (5) the magistrate's determination that appellant's claim before the civil rights commission violated the Agreed Entry was in error because: (a) the civil rights commission's letter of

---

[7] The magistrate did not address at this time the sanction or amount of attorney fees appellant should pay to appellees for their time in having to respond to appellant's August 24, 2016 motion to compel and show cause.

determination upon reconsideration was the only evidence presented and it was impermissible hearsay per Evid.R. 801 and 802; (b) no other evidence was presented that appellant made the representation she was a member or owner of RRL; (c) discrimination was the issue before the civil rights commission, not appellant's "membership" or "ownership" interest and, therefore, there was no reason to object to the civil rights commission's statement; and (d) appellant had exhausted her administrative remedy and thus could not object to the civil rights commission's statement other than to appeal; (6) the magistrate's determination that appellant listing IHT as the victim of embezzlement in the police report violated the Agreed Entry was in error because: (a) the only evidence was the unsigned police report; (b) appellant testified she verbally made the report and would not have provided IHT's address as her own; (c) appellant testified she was not given a copy of the police report and even if she had, the address seemed trivial as to whether an amended report was necessary; (d) the magistrate speculated as to whether a victim of embezzlement would follow-up to see how the case was progressing; and (e) appellant herself is the victim of embezzlement and she filed the report on her own behalf and not on behalf of IHT or RRL; and (7) the magistrate's determination that appellant's filing of two insurance claims alleging that she is an owner or member of RRL violated the Agreed Entry was in error because: (a) appellant testified she filed the insurance claims on her own behalf and not on behalf of IHT or RRL; (b) she filed the claims on the advice of counsel; and (c) appellant specifically informed Hartford in the July 20, 2016 e-mail that she is an "estranged member and owner of IHT/RRL." (Aug. 10, 2016 Appellees' Mot. to Show Cause, Ex. C, Apx. 2.)

{¶ 19} Appellees filed a response to the objections on March 9, 2017, a supplemental response to the objections, a motion for sanctions, and another motion to show cause on May 15, 2017.

{¶ 20} On May 17, 2017, the trial court overruled the objections and adopted the magistrate's decision. The court found that at the February 8, 2017 hearing before the magistrate, appellant, rather than show cause why she should not be held in contempt of court, sought to relitigate the terms of the parties Agreed Entry and the court's ruling that she had violated its terms. The court found that in its November 7, 2016 decision and entry it had determined appellees had met their initial burden to demonstrate by clear and convincing evidence that appellant had violated the Agreed Entry but then provided

appellant an opportunity to rebut appellees' initial showing. The court disagreed that appellant rebutted appellees' showing and found that "[appellant's] testimony was wholly implausible and belied by the documents presented at the hearing." (Nov. 7, 2016 Decision at 4.) As to the civil rights commission claim, the court found appellant's objection based on hearsay was not well-taken as it was not made at the time the civil rights commission's report was admitted, the report was a public record, and appellant's statement is the admission of a party-opponent. The court further agreed with the magistrate that appellant's position was unavailing. As to the filing of the police report, the court noted the report lists IHT as the victim and the victim type as a business, and further identifies appellant's employer as IHT and lists IHT's address as her employer's address. The court found to be, at best, wanting, appellant's explanations that she had not seen the report. As to the insurance company claims, the court noted appellant was an insurance professional and would have understood the insurance policies were for losses suffered by IHT and not for herself personally. The court found appellant's position that she did not realize she was holding herself out as a representative of IHT to not be credible. The court adopted the magistrate's decision recommending imposition of sanctions.[8] The court referred to the magistrate the determination of: (1) the appropriate sanctions for appellant's four separate violations of the Agreed Entry, including, but not limited to, legal fees expended by appellees in the prosecution of their motion to show cause dated August 10, 2016, as well as (2) the appropriate sanctions for appellant's failure to withdraw her frivolous motion to show cause dated August 24, 2016.[9]

---

[8] In the same entry, the court considered appellees' new motions to show cause and for sanctions filed on March 9, and May 15, 2017. In the new motions, appellees alleged appellant lied under oath during the February 8, 2017 hearing before the magistrate regarding the August 10, 2016 motion to show cause. The court found the motions to be well-taken and referred to the magistrate the determination of whether appellant should be held in contempt for her false testimony at the February 8, 2017 hearing and, if so, the appropriate sanction. In the December 21, 2018 decision, the magistrate found that appellant failed to show cause why she should not be held in contempt for her false testimony and that as a direct and proximate result of this contempt, appellees had incurred reasonable and necessary attorney fees in the amount of $3,996. Without any specific discussions regarding the same, the trial court adopted the magistrate's decision in full on March 15, 2019. We do not address the court's findings regarding the March 9 and May 15, 2017 motions to show cause and for sanctions at this time as appellant did not address this in her brief before the court. We note, however, that appellant's September 18, 2017 notice may provide additional context to appellant's statements made at the February 8, 2017 hearing.

[9] Appellant does not address this ruling in her assignments of error and, therefore, we will not address the same.

{¶ 21} Appellant appealed the court's May 17, 2017 decision overruling her objections and adopting the magistrate's decision. On June 30, 2017, this court dismissed the appeal as sanctions had yet to be fully determined and we lacked jurisdiction to hear the appeal. *See RRL Holding Co. of Ohio, LLC v. Stewart*, 10th Dist. No. 17AP-410 (June 28, 2017), Journal Entry of Dismissal.

## E. Arbitration

{¶ 22} On December 11, 2017, a three-member arbitration panel issued a final award granting appellees' claim for declaratory relief, ordering appellant to execute certain documents in furtherance of the finding that she was properly removed as a member of RRL; denying the balance of appellees' claims; and denying appellant's counterclaims in their entirety. Appellees filed a motion to confirm the arbitration award on December 18, 2017. Appellant objected and moved to modify, vacate, or correct in part the final award on January 1, 2018.[10] The trial court confirmed the award in all respects on February 5, 2018.[11] On February 15, 2018, appellant filed a notice of appeal of the trial court's February 5, 2018 order confirming the arbitration award. On September 28, 2018, this court affirmed the trial court's February 5, 2018 order. This court noted that appellant did not file a transcript and has not demonstrated a valid reason to vacate the arbitration award. *See RRL Holding Co. of Ohio, LLC v. Stewart*, 10th Dist. No. 18AP-118, 2018-Ohio-3956. Appellant appealed to the Supreme Court of Ohio. On December 26, 2018, the Supreme Court declined to accept jurisdiction of the appeal. (S.Ct. No. 2018-1618, *see* 2018-Ohio-5209.) On March 14, 2019, the Supreme Court denied appellant's motion for reconsideration of the same. (S.Ct. No. 2018-1618, *see* 2019-Ohio-769.)

---

[10] On January 8, 2018, appellant also filed a notice of appeal from the trial court's November 10, 2015 entry granting in part appellees' motion to stay proceedings pending arbitration. Appellant argued the November 10, 2015 entry was now subject to appeal as the final arbitration award was issued December 11, 2017. On February 1, 2018, this court dismissed appellant's appeal as an order granting or denying a stay of trial pending arbitration is a final order subject to immediate appeal and therefore appellant's appeal of the same was untimely and must be dismissed for lack of jurisdiction. *RRL Holding Co. of Ohio, LLC v. Stewart*, 10th Dist. No. 18AP-27 (Feb. 1, 2018) (Journal Entry of Dismissal).

[11] On March 7, 2018, appellees filed a motion to show cause as to why appellant should not be held in contempt for failing and refusing to comply with the court's February 5, 2018 order confirming the final arbitration award by failing to execute documents within 30 days by January 10, 2018 as ordered by the court. As noted previously, in the March 15, 2019 decision and entry, the trial court found the March 7, 2017 motion to be well-taken and ordered that a hearing will be set for appellant to oppose and show cause why she should not be held in contempt.

**F.  September 18, 2017 Notice of Supplemental Information**

{¶ 23} On September 18, 2017, a magistrate conducted a show cause hearing as directed by the trial court in its May 17, 2017 decision.  Early in the morning on the same day as the hearing, appellant filed a notice of supplemental information and exhibits thereto for an evidentiary hearing of September 18, 2017 ("September 18, 2017 Notice") and motion for attorney sanctions ("sanctions motion").  Appellant stated therein that she was providing "newly acquired information" including, among other items: (1) the original 32-page complaint she filed with the civil rights commission; (2) a summary of a narrative appellant states she submitted to police; (3) documentation showing advice of counsel to update her insurance claims; (4) copies of e-mails of appellant's then-counsel indicating counsel's opinion that the injunction was no longer in effect; and (5) copies of e-mails between appellant and the insurance companies.  In her conclusion, appellant moved the court "to consider this supplemental information."  (Sanctions motion at 22.)

**G.  Magistrate's and Court's Ruling on Appellees' August 10, 2016 Motion for Show Cause, Attorney Fees, and Sanctions**

{¶ 24} In her December 21, 2018 decision, the magistrate noted that the court's order of reference was to make the following determinations:

> a) The appropriate sanction(s) for [appellant's] four separate violations of the Agreed Entry, including but not limited to attorney fees expended by Plaintiffs in the prosecution of their August 10, 2016 show-cause motion;
>
> b) The appropriate sanction(s) for [appellant's] failure to withdraw her frivolous show-cause motion filed on August 24, 2016; and
>
> c) Whether [appellant] should be held in contempt for her false testimony at the hearing before [a Magistrate] on February 8, 2017, and if so, the appropriate sanction(s) for her contempt.

(Dec. 21, 2018 Magistrate's Decision at 5, ¶ 19.)  The magistrate noted appellant appeared and testified at the hearing on September 18, 2017, and that she was not credible.  The magistrate further noted appellees appeared and presented testimony of their attorney, Carnes, and the magistrate found Carnes to be very credible.  The magistrate also found appellant attempted to relitigate at the hearing the court's prior determination that she had

violated the Agreed Entry on four separate occasions and she had provided false testimony on February 8, 2017. The magistrate found appellees presented credible evidence and argument to support an award of sanctions for appellant violating the Agreed Entry and for failure to withdraw her frivolous motion to compel arbitration and show cause, and that appellant presented no credible evidence or argument to challenge an award of sanctions or show cause why she should not be held in contempt. The magistrate found that as a direct and proximate result of four separate violations of the Agreed Entry and her failure to withdraw her motion to compel and motion to show cause, appellees incurred reasonable and necessary attorney fees in the amount of $18,068.08. The magistrate further found appellees incurred reasonable and necessary attorney fees in the amount of $2,130.00 and $2,840.00 as a direct and proximate result of appellant's eleventh-hour filing of her appeal on June 6, 2017, which resulted in cancellation of the previously scheduled June 7, 2017 magistrate hearing and having to prepare and participate in the hearing before the magistrate on September 18, 2017 respectively.

{¶ 25} The magistrate recommended that, pursuant to R.C. 2705.05, the court should impose the following fines upon appellant: $250, $500, $1,000 and $1,000 for appellant's first, second, third, and fourth violations of the Agreed Entry respectively. The magistrate further recommended that appellees are entitled to recover attorney fees in the total amount of $27,034.08[12] from appellant.

{¶ 26} On January 4, 2019, appellant filed objections to the magistrate's decision along with a motion for sanctions on Fritz and Carnes. In the objections, appellant provided her summary of background on appellant, appellees, arbitration, a federal case and other investigations involving the parties. Appellant complained the magistrate did not consider the supplemental information evidence appellant filed on September 18, 2017. The objections did not, however, address the magistrate's December 21, 2018 decision regarding the imposition of sanctions and attorney fees and the recommended sanction and attorney fee amounts. Rather, appellant's objections addressed the court's November 7,

---

[12] The magistrate also found appellant failed to show cause why she should not be held in contempt for her false testimony at the February 8, 2017 hearing and as a direct and proximate result of the same, appellees had incurred reasonable and necessary attorney fees in the amount of $3,996.00. Adding the $3,996.00 to the amounts noted above, the magistrate determined appellees had incurred reasonable and necessary attorney fees in the total amount of $27,034.08. *See* fn. 9.

2016 decision granting the motion to show cause and finding that appellant had violated the Agreed Entry and the magistrate's decision of February 13, 2017 and the trial court's adoption thereof on May 17, 2017. Appellant reiterated the objections and arguments which she made in her February 27, 2017 objections to the magistrate's February 13, 2017 decision. The objections also addressed the reasons for appellant's failing to execute the terms of the arbitration agreement—which is the subject of a different motion to show cause filed by appellees on March 7, 2018—not the subject of the magistrate's decision of December 21, 2018 or this appeal. Finally, appellant asked the trial court to impose sanctions on Fritz and Carnes. Appellant did not file a transcript with her objections. Appellees filed a response.

{¶ 27} On March 15, 2019, the trial court overruled appellant's objections and adopted the magistrate's December 21, 2018 decision. The court noted appellant's objections again sought to relitigate the court's prior rulings and were not an objection to the appropriateness of the sanctions or to the amount. The court summarily concluded that appellant's objections were without merit and adopted the magistrate's December 21, 2018 decision.

{¶ 28} On April 8, 2019, appellant filed a notice of appeal. Consistent with her repeated efforts to address the findings in the court's November 7, 2016 decision and entry, the magistrate's decision of February 13, 2017 and the court's adoption of the same on May 17, 2017, appellant noted in her notice of appeal that "[t]his appeal is derived from the original decision and entry of May 17, 2017, however because the issue of sanctions had yet to be fully determined, the May 17, 2017 decision and entry did not constitute a final appealable order." Accordingly, appellant's assignments of error address the findings in the November 7, 2016 decision and entry, the February 13, 2017 magistrate's decision, May 17, 2017 decision and entry, the December 21, 2018 magistrate's decision, and the March 15, 2019 decision and entry to the extent they address the findings of four violations of the Agreed Entry and the imposition of sanctions and attorney fees for the same, as well as her repeated rejected efforts to move the court to reconsider the same. We limit our analysis accordingly.

## II. Assignments of Error

{¶ 29} Appellant appealed and assigns the following seven assignments of error for our review:

[I.] The courts enforcement of an agreed upon Preliminary Injunction *compels Appellate to lie* to the investigative authorities and conceal criminal activity which violates the constitution rights of the Appellate and promotes the obstruction of justice.

[II.] The courts *levy of sanctions for the protected activity of reporting a crime is adverse action* which violates state and federal laws designed to protect the whistleblower, Appellant Merrilee Stewart.

[III.] The courts judgement erred in the facts, *without hearing or consideration of the reliable, substantial evidence contained in the supplemental documentation* and thus made judgement on hearsay documents of others and a perjured affidavit which violates the due process rights of the Appellate and Ohio Rule of Evidence 803.

[IV.] The courts erred in the enforcement of a four-year-old agreed upon preliminary injunction with no emergent status because *all claims were sent to the jurisdiction of Arbitration and cases should not be split, wherefore relief sought, including equitable and/or preserving the status quo belong in Arbitration* pursuant to the FAA, the Supreme Court and case law.

[V.] The court *erred judgment of the attorney fees to the RRL attorney because as an unredeemed owner in RRL Defendant Appellate Merrilee Stewart is already paying a proportionate amount of the attorney fees from the profits of RRL,* which violates the principles of promissory and judicial estoppel.

[VI.] The actions of Defendant-Appellate were *on the advice of counsel and therefore she acted in good faith with no wrongful intent.* Any sanctions rendered are prejudicial, unjustified and misdirected.

[VII.] The trial court erred in not granting the Appellant's *request for a hearing on supplement information and attorney misconduct relating directly to the same set of facts and circumstances,* in violation of the due process clause of

the Fifth and Fourteenth Amendments to the United States Constitution.

(Sic passim.) (Emphasis sic.)

### III. Standard of Review

{¶ 30} An appellate court will not reverse a trial court's finding of contempt, including the imposition of penalties, absent an abuse of discretion. *Byron v. Byron*, 10th Dist. No. 03AP-819, 2004-Ohio-2143, ¶ 15.

{¶ 31} Contempt of court is defined as disobedience of an order of a court. *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55 (1971), paragraph one of the syllabus. It is "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Id.* "The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." *Id.* at paragraph two of the syllabus. A court has both inherent and statutory authority to punish contempt. *Howell v. Howell*, 10th Dist. No. 04AP-436, 2005-Ohio-2798, ¶ 19, citing *In re Contempt of Morris*, 110 Ohio App.3d 475, 479 (8th Dist.1996).

{¶ 32} Courts classify contempt as either direct or indirect, and as either criminal or civil. *See Cincinnati v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 202-03 (1973). Contempt is classified as direct or indirect depending on where the contempt occurs. Direct contempt occurs in the presence of the court in its judicial function. *Byron* at ¶ 12. Indirect contempt involves behavior outside the presence of the court that demonstrates lack of respect for the court or for the court's orders. *Id.*

{¶ 33} "While both types of contempt contain an element of punishment, courts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of the punishment." *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253 (1980). " 'Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.' " *Pugh v. Pugh*, 15 Ohio St.3d 136, 140 (1984), quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). Criminal contempt sanctions are not coercive in nature but act as "punishment for the completed act of disobedience, and to vindicate the authority of the law and the court." *Brown* at 254.

{¶ 34} Although, "[i]n cases of criminal, indirect contempt, it must be shown that the alleged contemnor intended to defy the court," in cases of "civil contempt" it is "irrelevant that the transgressing party does not intend to violate the court order. If the dictates of the judicial decree are not followed, a contempt citation will result." *Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121 (1991), paragraph two of the syllabus; *Pedone v. Pedone*, 11 Ohio App.3d 164, 165 (8th Dist.1983). *See also Windham Bank* at paragraph three of the syllabus. For civil contempt, the burden of proof is clear and convincing evidence; for criminal contempt, the burden of proof is proof beyond a reasonable doubt. *Lopez v. Lopez*, 10th Dist. No. 04AP-508, 2005-Ohio-1155, ¶ 56; *Brown* at syllabus. It is well-settled that to find a litigant in contempt, the court must find the existence of a valid court order, that the offending party had knowledge of such order, and that such order was, in fact, violated. *McCall v. Kranz*, 10th Dist. No. 15AP-436, 2016-Ohio-214, ¶ 9, citing *Arthur Young & Co. v. Kelly*, 68 Ohio App.3d 287, 295 (10th Dist.1990). Once the complainant has satisfied his or her initial burden of demonstrating the other party violated a court order, the burden shifts to the other party to either rebut the showing of contempt or demonstrate an affirmative defense by a preponderance of the evidence. *Ryan v. Ryan*, 10th Dist. No. 14AP-28, 2014-Ohio-3049, ¶ 12.

{¶ 35} The August 10, 2016 motion to show cause and the trial court's granting thereof finding contempt and imposition of sanctions and attorney fees at issue in this appeal concern indirect, civil contempt.

{¶ 36} The November 7, 2016 decision and entry, February 13, 2017 magistrate's decision, May 17, 2017 decision and entry, and December 21, 2018 magistrate's decision were interlocutory decisions addressing the court's determinations to: (1) grant the motion to show cause; (2) hold appellant in contempt of court; and (3) impose sanctions and attorney fees to enforce compliance and compensate for loss as a result of contempt. Integral to these decisions is the court's initial finding on November 7, 2016 that appellant violated the Agreed Entry by filing a claim with the civil rights commission, a report with police, and claims with two insurance companies, Hartford and Liberty. Appellant's objections to the magistrate's February 13, 2017 decision, appellant's September 18, 2017 Notice, and appellant's objections to the magistrate's December 21, 2018 decision were, in essence, attempts by appellant to rebut appellees' showing of contempt and move the court

to reconsider the determinations to initially find appellant had violated the Agreed Entry, grant the motion to show cause, hold appellant in contempt of court, and impose sanctions for the same. In particular, the September 18, 2017 Notice moved the court to consider the supplemental information. We construe the court's refusal to relitigate the same as not only overruling of objections to and adoption of the magistrates' decisions but, also, denials of appellant's efforts to move the court to reconsider the same.

{¶ 37} In accordance with Civ.R. 53, the trial court reviews a magistrate's decision de novo. *Black v. Columbus Sports Network, LLC*, 10th Dist. No. 13AP-1025, 2014-Ohio-3607, ¶ 14, citing *Mayle v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-541, 2010-Ohio-2774, ¶ 15. In reviewing objections to a magistrate's decision, the trial court must make an independent review of the matters objected to in order "to ascertain [whether] the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). An appellate court, by contrast, applies an abuse of discretion standard when reviewing a trial court's adoption of a magistrate's decision. *Id.* at ¶ 15. An abuse of discretion connotes more than an error of law or judgment; it implies the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Claims of error by the trial court must be based on the trial court's actions, rather than on the magistrate's findings. *Mayle* at ¶ 15. Therefore, we may reverse the trial court's adoption of the magistrate's decision only if the trial court acted unreasonably, arbitrarily, or unconscionably. *Id.*

{¶ 38} The same standard of review applies to a trial court's ruling on a motion for reconsideration. " 'A trial court has plenary power in ruling on a motion for reconsideration, and we will not reverse such rulings absent an abuse of discretion.' " *Black* at ¶ 19, quoting *Mindlin v. Zell*, 10th Dist. No. 11AP-983, 2012-Ohio-3543, ¶ 23. With these standards of review in mind, we will now consider appellant's assignments of error.

**IV. Analysis of the Fourth Assignment of Error**

{¶ 39} In her fourth assignment of error, appellant specifically argues the Agreed Entry was not in force once the court ordered the parties to participate in the arbitration process and stayed the case pending completion of the same. In support of this argument, appellant points to the trial court's decision of November 10, 2015 which ordered the parties claims, counterclaims, and defenses be submitted to binding arbitration and ordered

"[p]laintiffs' claims against TRG, including TRG's defenses, are hereby STAYED pending the resolution of the arbitration process." (Emphasis sic.) (Nov. 10, 2015 Decision at 6.)

{¶ 40} The trial court stayed appellees' claims against TRG and TRG's defenses in response to appellees' July 20, 2015 motion requesting the same pursuant to R.C. 2711.02(B).[13] R.C. 2711.02(B) states that "[i]f any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties *stay the trial of the action* until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration." (Emphasis added). Courts of this state have recognized that the purpose of a preliminary injunction pending arbitration is to preserve the status quo of the parties pending a decision on the merits. *See E. Cleveland Firefighters, IAFF Local 500, AFL-CIO v. E. Cleveland*, 8th Dist. No. 88273, 2007-Ohio-1447, ¶ 5, citing *State ex rel. CNG Financial Corp. v. Nadel*, 111 Ohio St.3d 149, 2006-Ohio-5344; *Dunkelman v. Cincinnati Bengals, Inc.*, 158 Ohio App.3d 604, 2004-Ohio-6425 (1st Dist.); *Proctor & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260 (1st Dist.2000); *see also Nationwide Mutual Ins. Co. v. Universal Fidelity Corp.*, S.D.Ohio No. C2-01-1271 (July 15, 2002) (recognizing that injunctions pending arbitration should ordinarily be limited to preserving the status quo so that the arbitration is not a "hollow proceeding"); *Parsley v. Terminix Internatl. Co. L.P.*, S.D.Ohio No. C-3-97-394 (Sept. 15, 1998) (recognizing preliminary injunction is only warranted when necessary to preserve the meaningfulness of the arbitration process). Similar reasoning applies here where the Agreed Entry was stipulated to and entered "as to" appellees' motion for preliminary injunction. The trial court did not err when it determined the Agreed Entry was still in effect during the pendency of arbitration.

{¶ 41} Accordingly, the fourth assignment of error is overruled.

---

[13] The exact wording of this order refers to a stay of claims and defenses involving TRG, a non-party to this case. However, the parties and the court all seem to understand it to also refer to a stay of the claims and defenses between the parties while the arbitration was pending. Such understanding is consistent with R.C. 2711.02(B).

## V.  Analysis of the First, Third, and Part (C) of the Seventh Assignments of Error

## A.  First Assignment of Error

{¶ 42}  In her first, third, and part (C) of her seventh assignments of error, appellant argues the trial court erred in enforcing the Agreed Entry, finding appellant violated the Agreed Entry, failing to hold a hearing on the violations, and failing to reconsider its finding of violations.  In support of her first assignment of error, appellant argues the trial court erred in its interpretation of the Agreed Entry, first, by misconstruing the "spirit" of the Agreed Entry; and second, by interpreting the Agreed Entry to prohibit her from representing herself as an owner or member of RRL; and third, by interpreting the Agreed Entry to prohibit her from reporting or forcing her to conceal a crime.[14]

{¶ 43}  First, appellant argues that the "spirit" of the Agreed Entry is that she refrain from representing that she has authority to transact business on behalf of RRL or IHT.  We agree that Section IV of the Agreed Entry, regarding non-solicitation and trade secrets, expresses the same.  However, there are four additional sections of the Agreed Entry.  Section I, regarding non-affiliation, is what is at issue here.  Therefore, we find the trial court did not misconstrue the spirit of the Agreed Entry as appellant argues.

{¶ 44}  Second, Section I, paragraph a, stipulates that appellant and TRG would refrain from: "representing to any person, business, or entity that Defendants are employees, agents, *authorized representatives*, producers, officers, managers or doing business as, *or in any way working with or for*, plaintiffs IHT or RRL." (Emphasis added.) It is true, as appellant points out, that the Agreed Entry does not specifically use the words "member" or "owner," and that whether appellant remains a member or owner of RRL is at the heart of this dispute.  Nevertheless, whether, in identifying herself as a member or owner, appellant was representing herself as an authorized representative or in any way working with or for IHT or RRL, depends on the context of her representation and all the surrounding facts.  Accordingly, it is important to carefully examine the same for each alleged violation.  We do this as we consider the third assignment of error and part (C) of the seventh assignment of error.

---

[14] In light of the court's determination sustaining in part the first, third, and part (C) of the seventh assignments of error, it is not necessary for this court to consider whether the Agreed Entry prohibits appellant from reporting or forcing her to conceal a crime.

**B. Third and Part (C) of the Seventh Assignments of Error**

{¶ 45} In her third assignment of error and part (C) of her seventh assignment of error, appellant argues the court erred in not holding a hearing on the finding of violations, in not providing appellant an opportunity to rebut the finding of violations or, in the alternative, in essence, in not reconsidering the initial finding of violations of the Agreed Entry. Appellant argues the court made its initial finding of violations based on documents drafted by other persons—the civil rights commission's redetermination letter and the police intake form—and she was updating the insurance claim she filed prior to the Agreed Entry. Appellant further argues the court did not take into consideration the supplemental evidence she submitted with the September 18, 2017 Notice and exhibits thereto.

{¶ 46} We agree the trial court did not give appellant an opportunity to rebut its initial finding of violations of the Agreed Entry with regard to the civil rights commission's claim and the police report and abused its discretion in not reconsidering its interlocutory finding of November 7, 2016 and May 17, 2017, and in entering the final decision of March 15, 2019 with regard to the insurance claims. This is evidenced in the court's implicit rejection, without any reference thereto of the September 18, 2017 Notice and exhibits thereto and appellant's objections to the magistrates' decisions. It is also evidenced by the court's express words in its decisions.

{¶ 47} In the court's November 7, 2016 decision, the court initially found appellant violated the Agreed Entry and referred the matter to the magistrate to set a hearing for the narrow purpose of having appellant "show cause for why she should not be held in contempt for her [violations]." (Nov. 7, 2016 Decision at 5.) At the February 8, 2017 hearing, the magistrate began by noting that the hearing was limited to two issues, the "second [issue] is - - we have to do whether Merrilee Stewart's conduct in - - violates the agreement or the spirit of the agreement that was entered into on or about May 26th, 2015, agreed entry as to the plaintiff RRL Holding Company of Ohio, LLC and IHT Insurance Agency Group, LLC motion for a preliminary injunction that was agreed to." (Tr. at 2.) Appellees' counsel then attempted to narrow the scope of the hearing to a determination of whether appellant should be held in contempt for her violations and the magistrate agreed. However, the magistrate did permit appellant's counsel to make an opening statement which addressed each of the four violations the court had previously determined.

Furthermore, notwithstanding the magistrate informing appellant of the limited scope of the hearing, appellant testified, on direct, cross-, and redirect-examination, in detail that she did not violate the Agreed Entry when she filed the claim with the civil rights commission, the report with police, and the claims with the insurance companies. In the February 13, 2017 decision as discussed above, the magistrate did discuss appellant's testimony and found it to be not credible.

{¶ 48} In the May 17, 2017 decision adopting the magistrate's decision, the court likewise addressed appellant's testimony, but observed that at the magistrate's hearing, appellant "sought to relitigate * * * the Court's ruling that she had violated [the Agreed Entry]." (May 17, 2017 Decision at 3.) Furthermore, despite its narrow instruction on the scope of the magistrate's hearing in the November 7, 2016 decision, the court noted that the November 7, 2016 decision "referred the issue of contempt to [the magistrate] for a hearing at which [appellant] was provided an opportunity to rebut [appellees'] initial showing" that appellant had violated the Agreed Entry. (May 17, 2017 Decision at 4.)

{¶ 49} Nevertheless, four months later, immediately prior to the next hearing, appellant filed her September 18, 2017 Notice. For the reasons we discuss in detail below, we find the September 18, 2017 Notice and the exhibits thereto warranted careful consideration by the trial court. However, the court never addressed or even mentioned the September 18, 2017 Notice and exhibits thereto.

{¶ 50} In the December 21, 2018 decision, the magistrate noted that, pursuant to the court's July 5, 2017 order of reference, the magistrate heard evidence and arguments in order to determine "appropriate sanction(s) for [appellant's] four separate violations of the Agreed Entry, including but not limited to attorney fees." (Dec. 21, 2018 Mag. Decision at 5.) The magistrate observed that appellant presented no credible evidence or argument to challenge an award of sanctions; rather, appellant "sought (yet again) to relitigate the Court's ruling that [she] violated the Agreed Entry."[15] (Dec. 21, 2018 Mag. Decision at 6.) The magistrate concluded "th[e] Court has previously determined that [appellant] acted in indirect contempt of this Court by her four separate violations of the Agreed Entry." (Dec. 21, 2018 Mag. Decision at 8.)

---

[15] The record does not contain a transcript of the September 18, 2017 hearing.

{¶ 51} In her January 4, 2019 objections to the December 21, 2018 magistrate's decision, appellant specifically objected that the magistrate failed to review the evidence presented in the September 18, 2017 Notice and exhibits thereto. Appellant argued "[p]erhaps the most egregious error in the magistrate's decision of December 21, 2018 is the failure to review the supplemental documentation provided to the court on September 18, 2017." (Appellant's Obj. at 18.)

{¶ 52} The magistrate's December 21, 2018 decision did not stray from the court's narrow order of reference to the magistrate, and in its March 15, 2019 decision, the court did not address appellant's specific objection. Nevertheless, construing the September 18, 2017 Notice as a motion for an opportunity to rebut or a motion to reconsider the court's initial finding of violations, the court erred in not even mentioning the September 18, 2017 Notice. Rather, the court noted "[u]nsurprisingly, [appellant's] objection to [the magistrate's] Decision is nothing more than another attempt to relitigate the Court's prior rulings, [and] [r]ather, as stated by [appellees], 'she again argues that she never should have been held in contempt in the first instance.' " (Mar. 15, 2019 Decision at 7.) Despite the court's prior rulings being interlocutory in nature, the court rejected appellant's effort to convince the court to provide her an opportunity to rebut and to reconsider its initial finding that she violated the Agreed Entry.

{¶ 53} A court may reconsider and reverse an interlocutory decision at any time before the entry of final judgment, either sua sponte or upon motion. *Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.*, 10th Dist. No. 12AP-647, 2013-Ohio-3890, ¶ 27. "[R]econsideration of interlocutory decisions is a matter within the judge's sound discretion." *Id.* at ¶ 68. As noted above, an appellate court will not disturb a trial court's denial of reconsideration absent an abuse of discretion.

{¶ 54} A detailed discussion of the court's initial finding of violations, the August 10, 2016 motion and exhibits, evidence from the February 8, 2017 hearing, the September 18, 2017 Notice and exhibits thereto, and appellant's objections to the magistrates' decisions is now warranted to explain our conclusion that the trial court erred in not giving appellant an opportunity to rebut its initial finding of violations regarding the civil rights commission's claims, the police report, and in not reconsidering its initial finding of violations regarding the insurance claims.

**1. Civil rights commission claim**

{¶ 55} The court's initial finding that appellant violated the Agreed Entry by filing a claim with the civil rights commission was based on exhibit A to the August 10, 2016 motion to show cause.

{¶ 56} The August 10, 2016 exhibit A is a copy of the civil rights commission letter of determination upon reconsideration. In denying appellant's request to reconsider its prior finding of no probable cause and declination to sue appellees for unlawful discrimination, the civil rights commission made, inter alia, the following finding of fact: "Although her charge alleges that she was constructively discharged, she now denies this in her request for reconsideration, claiming that 'I am now and remain a member/owner' of [appellees]." (Nov. 7, 2016 Decision at 4, quoting Civil Rights Commission Letter at 2.) At the hearing before the magistrate on February 8, 2017, appellant attempted to convince the magistrate to reconsider the court's initial finding. Appellant testified she included herself in submitting a list of all the members of RRL but was representing herself as the claimant/victim; her understanding of the Agreed Entry was that it prohibited her from holding herself out as representing IHT or RRL; and she never intended to violate the Agreed Entry with her filing of the civil rights commission claim. As noted previously, the magistrate was not persuaded and found her explanations to be unavailing as appellant did nothing to object to the civil rights commission's statement and did not convince the magistrate that the civil rights commission was mistaken when it stated she held herself out as a member or owner. The trial court agreed appellant's explanations were wholly implausible and unavailing. The court further found appellant's testimony was belied by the document presented at the hearing and rejected appellant's arguments that the civil rights commission's letter was impermissible hearsay as appellant did not raise the same objection at the time the letter was admitted, the letter was a public record, and appellant's statement was the admission of party-opponent. The trial court adopted the magistrate's decision as to the civil rights commission's claim.

{¶ 57} Appellant again attempted to convince the trial court to reconsider its initial finding with the September 18, 2017 Notice and exhibits thereto. In the notice, appellant argued the confusion before the civil rights commission stemmed from appellant's complaint related to charges affecting her personally and other charges stemming from her

firsthand knowledge from her management and board roles at IHT from the years 2007 to 2014, as well as from references to IHT and RRL as IHT/RRL rather than as two separate entities.  Appellant also made several arguments regarding the interpretation of the IHT Operating Agreement and the Buy/Sell Agreements.  Further, she claimed it is clear from her claim before the civil rights commission that she is a victim and a whistleblower and that appellees' alleged discriminatory treatment of her was retaliation.

{¶ 58} The notice referred to numerous exhibits.  Most of the exhibits were filed several days later, on September 22, 2017, with a statement that the "attached exhibits [were] referenced to the Judge in the evidentiary hearing on Monday, September 18, 2017 and in [the September 18, 2017 Notice]."  The exhibits are voluminous, approximately 300 pages, and are not presented in an organized manner thereby making it difficult for the trial court and this court to review.

{¶ 59} Notwithstanding, specific to the civil rights commission's claim the exhibits contain copies of several documents purportedly submitted to the civil rights commission, including a copy of the original claim.  In these documents, appellant makes several statements to the civil rights commission which provide context to the representations appellant made to the civil rights commission and warranted a hearing to provide appellant an opportunity to rebut the court's initial finding of violations.  Following is a brief summary of some of appellant's statements to the civil rights commission as shown in the exhibits:

> ● In a document titled "event date clarification," appellant explained to the civil rights commission that she had also filed a report with HUD about appellees alleged violations of fair housing laws.  She indicated therein that her knowledge of this was "by virtue of holding a management position at IHT in the years 2007-2014."  (Sept. 22, 2017 Event Date Clarification, at 1.); and

> ● In a document titled "original Ohio Civil Rights complaint" and a "narrative" thereto, appellant stated: (a) that the events about which she was complaining took place from "2007 through 2015, the most recent act in May 2015" (Narrative at 3.); (b) that she was one of four members holding 16.7 percent membership in RRL/IHT; (c) that she can only provide financial info up to August 2014 because after that point "she has been denied access to all data" (Narrative at 6.) and that she has "never been an employee, and has always been a

member" (Narrative at 7.); (d) that the male members tried to remove her as a member on December 30, 2014; and (e) that the male members had cut off her health and vision insurance, stopped her distributions, discriminated against her and retaliated against her.

{¶ 60} If, in fact, these statements provided the specific context of her statement to the civil rights commission that she is "now and remains a member/owner" of appellees, we could not uphold a finding that by clear and convincing evidence appellant violated the Agreed Entry. We recognize, however, that these documents are copies and summaries. Accordingly, we remand the decision, as to the civil rights commission's claim, to the trial court to hold a hearing on the September 18, 2017 Notice and exhibits thereto and provide appellant an opportunity to rebut the court's initial finding of violations to determine whether reconsideration is warranted.

## 2. **Police report**

{¶ 61} The court's initial finding that appellant violated the Agreed Entry by filing a report with police was based on exhibit B to the August 10, 2016 motion to show cause.

{¶ 62} The August 10, 2016 exhibit B is a copy of the preliminary investigation report of the Columbus Division of Police regarding the claim made by appellant that IHT was the victim of embezzlement. The report indicates: the reporting officer and the officer who entered the report into the system were the same; it was entered the same day it was reported, July 7, 2016; the "call source" was a "walk-in"; the victim is listed as IHT Insurance; no other victims are listed; appellant is listed as a "witness" and her work address is listed as 6457 Reflections Drive, Dublin, Ohio 43017; and her "employer" is listed as IHT Insurance and the "employer address" is listed as 6457 Reflections Drive, Dublin, Ohio 43017. At the hearing before the magistrate on February 8, 2017, appellant attempted to convince the magistrate to reconsider the court's initial finding. Appellant testified she went to the police station and gave some information to an officer who scribbled down notes on a scratch pad, she gave the officer her driver's license to show him her name and address, and she filed the report "[a]s an individual and a victim." (Tr. at 31.) She further testified she never saw the report until the motion for contempt was filed. As noted above, the magistrate was not persuaded by appellant's testimony and found her explanation that the officer filed the report using erroneous information and her statement that she did not have

a prior opportunity to see or correct the report to be not worthy of belief. The magistrate reasoned that a person who claims she is a victim to the tune of $5-10 million dollars would follow up to see how the claim was progressing. The trial court agreed and found appellant's explanation regarding the police report was, at best, wanting. The trial court adopted the magistrate's decision as to the police report.

{¶ 63} Appellant again attempted to convince the trial court to reconsider its initial finding with the September 18, 2017 Notice and exhibits thereto. In the September 18, 2017 Notice, appellant argued the finding that she had held herself out as representing IHT in filing the police report was based on an intake form, not the claim report that she had submitted "as a victim and an informant." (Sept. 18, 2017 Notice at 13.) She claimed she had submitted to police a series of actual court documents "to show what each parties claim" [sic], and details of her claims as a victim. She included in the notice a narrative which stated:

> ● "I see my authority to report this criminal activity from my position as an 'Insider – Whistle Blower' and also as a victim of the systematic embezzlement," and

> ● "I was active in the management of IHT Insurance Agency Group * * * during the years of 2007 to 2014."

(Sept. 18, 2017 Notice at 13.)

{¶ 64} Appellant also attached three "demand letters," which she stated reveal the specifics of what she told police. In the demand letters, appellant is identified as having "succeeded to the rights of Norman L. Fountain, Norman L. Fountain Ins. & Assoc., LLC, and Speedy Auto Insurance Agency, LLC, including the trade names of Your Insurance Agency and Client Choice Insurance (collectively, the 'Fountain Entities')." (Sept. 23, 2016 "Demand Letter.") The letter states it includes demand for commissions owed to her by IHT as well as amounts due and owing to Fountain Entities. Also included are several copies of letters from Norman L. Fountain to whom it may concern, indicating appellant is an "additional Agency Owner and Principle in my agency." (Dec. 5, 2015 Letter.)

{¶ 65} If, in fact, these statements and exhibits provided the specific context of her filing the report with police, we could not uphold by clear and convincing evidence appellant violated the Agreed Entry. We recognize, however, that these statements and exhibits are copies and summaries. Accordingly, we remand the decision, as to the police

report, to the trial court to hold a hearing on the September 18, 2017 Notice and exhibits thereto and provide appellant an opportunity to rebut the court's initial finding of violations to determine if reconsideration is warranted.

## 3. **Insurance claims**

{¶ 66} The court's initial finding that appellant violated the Agreed Entry by filing claims with Hartford and Liberty was based on exhibit C and appendices thereto attached to the August 10, 2016 motion to show cause.

{¶ 67} Exhibit C and appendices one through five are copies of e-mails sent by appellant to Hartford in an effort to report alleged embezzlement at IHT and a claims summary filed with Liberty regarding the same. At the hearing before the magistrate on February 8, 2017, appellant attempted to convince the magistrate to reconsider the court's initial finding. Appellant testified she was one of the victims on whose behalf she filed the insurance claims and that other victims included IHT, agents, and customers. She conceded that although the Liberty claims summary did not contain her name, she did in fact file the claim. She also explained that the e-mails to Hartford were follow-up communications to a claim she had initiated before signing the Agreed Entry and that she filed the claims and updates on the advice of counsel. As noted previously, the magistrate was not persuaded and reasoned that such advice did not relieve her of her responsibility to abide by the Agreed Entry and that it could not excuse such conduct. The trial court noted appellant's explanation that she had filed the insurance claims in her personal capacity but found that, as an insurance professional, appellant would have understood that the policies were for losses suffered by IHT. The court found to be not credible appellant's position that she did not realize she was holding herself out as a representative of IHT when filing the claims. The trial court adopted the magistrate's decision as to the insurance claims.

{¶ 68} Upon careful review of exhibit C and attached appendices, it appears that when filing the insurance claim with Hartford, appellant clarified the uncertainty of her status as a member/owner. In her July 19, 2016 e-mail, while she did represent herself as a member/owner, she also listed the names of the other owners and their percentages. She also explained that at a meeting in September 2014, the partnership relationship was severed and that in October 2014, she was informed by Bill Griffioen there was no longer

any future for her at the company. She stated that three members had made an attempt to oust her from the company. In her July 20, 2016 e-mail, she listed herself as an "Estranged member and owner IHT/RRL." (Exhibit C, Appendix 2, to the Aug. 10, 2016 Mot. to Show Cause.) In her July 28, 2016 e-mail, appellant again listed herself as an "Estranged member/owner." Furthermore, consistent with her testimony at the February 8, 2017 hearing as the person/entity who suffered loss due to the alleged embezzlement, appellant listed IHT/RRL, agents, employees, managers, independent producers, owners, taxing authorities, and customers. The Liberty claims summary does not list appellant's name and also does not indicate who is the claimant or the position of the claimant. Finally, we note appellees presented no evidence regarding who had authority pursuant to the contracts with Hartford and Liberty to file claims and who or what entity was the insured. On this initial evidence alone, we cannot uphold a finding that by clear and convincing evidence appellant violated the Agreed Entry. The September 18, 2017 Notice and exhibits thereto pertaining to the insurance claims, although not necessary to our conclusion, reinforce our conclusion that the trial court erred in not reconsidering its initial finding that appellant violated the Agreed Entry by filing the insurance claims.

{¶ 69} Appellant again attempted to convince the trial court to reconsider its initial finding with the September 18, 2017 Notice and exhibits thereto. In the Notice, appellant again stated she filed the insurance claims prior to the filing of the Agreed Entry and that she subsequently updated the insurance companies upon the advice of counsel. Exhibits filed on September 22 contain copies of additional e-mails between appellant and Hartford in which appellant appears to be inquiring whether she is an insured member of the limited liability company. The Hartford representative, Julie Dengler, responds in an April 29, 2015 e-mail that "[m]embers of a limited liability company are insureds only with respect to the conduct of your business." In a February 20, 2017 e-mail from appellant to Hartford, appellant states that she believes she is insured under the Hartford – IHT policy as her membership interest in RRL is unredeemed. She goes on to say "[m]y active involvement in the management of IHT Insurance Agency Group was 2007 to 2014."

{¶ 70} Even without these e-mails providing context to the filing of the claims with the insurance companies, we cannot uphold a finding that by clear and convincing evidence, based solely on exhibit C and appendices to the August 10, 2016 motion, appellant

violated the Agreed Entry. Therefore, we sustain the first, third, and part (C) of the seventh assignments of error to the extent they assign error in not reconsidering its finding of violations regarding the filing of the insurance claims.

{¶ 71} Accordingly, we sustain appellant's first, third, and part (C) of the seventh assignments of error to the extent they allege the trial court erred in not holding a hearing and in not providing an opportunity to rebut its initial finding that appellant violated the Agreed Entry when she filed a claim with the civil rights commission and a report with police. On remand, the court shall hold a hearing on the September 18, 2017 Notice and exhibits thereto to provide appellant an opportunity to rebut the initial finding of violations regarding the civil rights commission claim and police report to determine if reconsideration is warranted. Furthermore, we sustain the same assignments of error to the extent they allege the trial court erred in not reconsidering its initial finding that appellant violated the Agreed Entry when she filed the insurance claims. On remand, the trial court shall vacate that finding and any award of sanctions or attorney fees pertaining thereto. Finally, to the extent appellant's first, third, and seventh assignments of error allege additional errors or abuse, they are rendered moot.

## VI. Analysis of the Second, Fifth, and Sixth Assignments of Error

{¶ 72} In her second, fifth, and sixth assignments of error, appellant argues the trial court erred by imposing sanctions on appellant and awarding appellees attorney fees. Pursuant to our resolution of the fourth, first, third, and part (C) of the seventh assignments of error, we find the second, fifth, and sixth assignments of error are rendered moot.

## VII. Analysis of the Seventh Assignment of Error Parts (A) and (B)

{¶ 73} In parts (A) and (B) of her seventh assignment of error, appellant alleges the trial court erred in not granting her September 18, 2017 motion for sanctions. The trial court denied this motion on December 12, 2017. Appellant argues the court erred in not imposing sanctions: (1) on Fritz Griffioen for tendering a false affidavit and interfering with a police investigation, a court proceeding, and insurance investigation, and (2) on appellees' Attorney James R. Carnes for attorney misconduct, perjury, fraud, witness tampering, abuse of process, and other claims. Appellant further alleges the trial court erred in not holding a hearing on the same. We decline to address appellant's seventh assignment of error, parts (A) and (B), as the court's ruling denying sanctions was not addressed in any of

the court's decisions addressed in the notice of appeal. Accordingly, parts (A) and (B) of appellant's seventh assignment of error are dismissed.

## VIII. Conclusion

{¶ 74} Appellant's fourth assignment of error is overruled. To the extent appellant alleges the trial court erred in not granting a hearing and not providing an opportunity to rebut its initial finding that appellant violated the Agreed Entry by filing a claim with the civil rights commission and a report with police; and to the extent appellant alleges the trial court erred in not reconsidering its initial finding that appellant violated the Agreed Entry by filing claims with the insurance companies, appellant's first, third, and part (C) of her seventh assignments of error are sustained and the March 15, 2019 decision and entry of the Franklin County Court of Common Pleas is reversed in part. The remainder of the first, third, and seventh assignments of error, as well as the second, fifth, and sixth assignments of error are rendered moot. Finally, parts (A) and (B) of the seventh assignment of error are dismissed as the court's December 12, 2017 entry was not raised in the notice of appeal. This case is remanded to the trial court in accordance with law and the instructions within this decision.

*Judgment reversed in part;*
*cause remanded with instructions.*

NELSON, J., concurs.
SADLER, P.J., concurs in part and dissents in part.

SADLER, P.J., concurring in part and dissenting in part.

{¶ 75} I concur in the majority decision overruling the second, fourth, fifth, and sixth assignments of error and overruling in part appellant's seventh assignment of error. However, because I disagree with the majority in sustaining appellant's first and third assignments of error and sustaining appellant's seventh assignment of error in part, I respectfully concur in part and dissent in part.

{¶ 76} The majority decision summarizes its ruling in this appeal at the "Conclusion," which reads in relevant part as follows:

> To the extent appellant alleges the trial court erred in not granting a hearing and not providing an opportunity to rebut its initial finding that appellant violated the Agreed Entry by filing a claim with the civil rights commission and a report

> with police; and to the extent appellant alleges the trial court erred in not reconsidering its initial finding that appellant violated the Agreed Entry by filing claims with the insurance companies, appellant's first, third, and part (C) of her seventh assignments of error are sustained and the March 15, 2019 decision and entry of the Franklin County Court of Common Pleas is reversed in part.

(Majority Decision at ¶ 74.)

{¶ 77} Because I believe the record in this case shows that appellant had an opportunity to present evidence to rebut the trial court's initial determination that appellant violated the Agreed Entry, I disagree with the majority's conclusion.

{¶ 78} In its November 7, 2016 decision and entry granting appellees' August 10, 2016 motion to show cause, the trial court summarized the allegations in appellees' motion and examined the evidence submitted by appellees in support of the allegations. The trial court also considered appellant's memorandum in opposition to the motion to show cause, wherein appellant argued that the Agreed Entry was mooted by the pending arbitration and that her conduct as alleged in the motion, if proven true, did not constitute a violation of the Agreed Entry as appellant interpreted the document.

{¶ 79} The trial court first determined the Agreed Entry was not mooted by the submission of the case to arbitration. The trial court next determined that appellant's conduct as alleged in the motion violated the Agreed Entry, as the trial court interpreted the document, in four ways: (1) filing a complaint with the civil rights commission in which appellant allegedly stated: "I am now and remain a member/owner of [IHT]"; (2) submitting an oral report to the Columbus Police Department regarding alleged embezzlement of IHT funds; (3) submitting a claim to Hartford Insurance Company in IHT's behalf; and (4) submitting a claim to Liberty Mutual Insurance Company on IHT's behalf. (May 19, 2016 Letter of Determination, attached as Ex. A to Aug. 10, 2016 Mot. to Show Cause.) The trial court then referred the case to a magistrate for appellant "to appear and show cause for why she should not be held in contempt for her failure to comply with the parties' May 28, 2015 Agreed Entry." (Nov. 7, 2016 Decision & Entry at 5.)

{¶ 80} In sustaining several of appellant's assignments of error, the majority finds the magistrate unfairly prevented appellant from presenting evidence and argument at

the February 8, 2017 evidentiary hearing in support of her contention that she did not engage in conduct violative of the Agreed Entry. However, in my view, the magistrate's decision and the trial court's subsequent decision overruling appellant's objections reveal the magistrate merely prevented appellant from making the same legal arguments that the trial court previously considered and rejected in its November 7, 2016 decision and entry. Contrary to the majority's conclusion, the record shows the magistrate permitted appellant to present evidence and arguments in support of her contention that she did not engage in the contumacious conduct alleged in the motion.

{¶ 81} At the hearing before the magistrate, appellant made two legal arguments: (1) the Agreed Entry was moot; and (2) appellant's conduct as alleged in appellees' motion to show cause and as evidence in the supporting documents, if proven true, did not result in a violation of the Agreed Entry as appellant interpreted the document. Because the trial court had resolved both of those legal issues in its November 7, 2016 decision and entry granting appellees' motion to show cause, the magistrate determined she did not have the authority to reconsider the trial court's decision on those legal issues. I agree with the magistrate on this issue. *See* Civ.R. 53(D)(1).[16]

{¶ 82} In addition to the preceding legal arguments, appellant also argued she did not engage in the contumacious conduct alleged in appellees' motion to show cause and evidenced by the documents submitted by appellees. With regard to the civil rights complaint, appellant attempted to prove, by her own testimony, that she did not make the statements attributed to her in the commission's report. With regard to the Columbus Police Department report, appellant attempted to show, by her own testimony, that the

---

[16] Civ.R. 53(D)(1), entitled "[r]eference by court of record," provides, in relevant part, as follows:

> (a) Purpose and method.
>
> A court of record may, for one or more of the purposes described in Civ.R. 53 (C)(1), refer a particular case or matter or a category of cases or matters to a magistrate by a specific or general order of reference or by rule.
>
> (b) Limitation.
>
> A court of record may limit a reference by specifying or limiting the magistrate's powers, including but not limited to, directing the magistrate to determine only particular issues, directing the magistrate to perform particular responsibilities, directing the magistrate to receive and report evidence only, fixing the time and place for beginning and closing any hearings, or fixing the time for filing any magistrate's decision on the matter or matters referred.

officer who took her oral report mistakenly identified IHT as the victim, rather than appellant. Finally, with regard to the insurance claims, appellant testified she submitted those claim on her own behalf, not on behalf of IHT, and she did so on the advice of counsel.

{¶ 83} The magistrate found appellant's testimony lacked credibility and determined that appellant had failed to rebut the trial court's preliminary ruling that appellant violated the Agreed Entry by her conduct as alleged in appellees' motion to show cause. In my view, the decision of the magistrate was based solely on the magistrate's assessment of the weight and credibility of appellant's testimony. Contrary to the conclusion reached in the majority decision, I do not find that the magistrate prevented appellant from making arguments or presenting evidence in support of her contention that she did not engage in the contumacious conduct alleged in appellees' motion to show cause. Appellant and her trial counsel simply elected to rely on appellant's testimony to rebut the allegations. The magistrate cannot be faulted for that decision.

{¶ 84} In her objections to the magistrate's decision, appellant persisted in arguing that the trial court had misinterpreted the Agreed Entry. She contended that the language used by the parties in the Agreed Entry did not prohibit her from claiming that she is a "member" or "owner" of IHT. My reading of appellant's objections reveals that appellant mischaracterized her purely legal argument regarding contract interpretation as a factual issue.[17] In overruling appellant's objections, the trial court rejected appellant's contention that the magistrate had erred by failing to hear evidence and argument regarding the meaning of the Agreed Entry. Appellant also objected to the magistrate's decision to disbelieve her testimony that she did not engage in the contumacious conduct alleged in appellees' motion to show cause. The trial court's May 17, 2017 decision provides, in relevant part, as follows:

> Stewart primarily objects to the Magistrate's Decision on the basis that she was not provided a full hearing before the Court's finding of contempt. However, as noted in Plaintiffs' reply, this is a false premise. The Court's November 7, 2016 Decision found that Plaintiffs met their initial burden to demonstrate by clear and convincing evidence that Stewart had violated the

---

[17] The interpretation of a written contract is, in the first instance, a matter of law for the court. *Columbus Countywide Dev. Corp. v. Junior Village of Dublin, Inc.,* 10th Dist. No. 03AP-73, 2003-Ohio-5447, ¶ 19.

> parties' Agreed Entry. The Court referred the issue of contempt to [a] Magistrate * * * for a hearing at which Stewart was provided an opportunity to rebut Plaintiffs' initial showing.
>
> Stewart further argues that her testimony at the hearing successfully rebutted Plaintiffs' showing. The Court disagrees. As discussed below, Stewart's testimony was wholly implausible and belied by the documents presented at the hearing.

(May 17, 2017 Decision at 4.)

{¶ 85} "Civil contempt must be demonstrated by clear and convincing evidence." *Brooks-Lee v. Lee*, 10th Dist. No. 11AP-284, 2012-Ohio-373, ¶ 13, citing *Flowers v. Flowers*, 10th Dist. No. 10AP-1176, 2011-Ohio-5972, ¶ 13, citing *Fidler v. Fidler*, 10th Dist. No. 08AP-284, 2008-Ohio-4688, ¶ 14. "The trier of fact is vested with discretion in determining whether clear and convincing evidence supports a contempt finding." *Flowers* at ¶ 13, citing *Fidler* at ¶ 14, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978). "This is because ' "[c]redibility issues are not resolved as a matter of law, but are left to the trier of fact to determine." ' " *Flowers* at ¶ 13, quoting *Nott v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 10AP-1079, 2011-Ohio-5489, ¶ 6, quoting *Ciccarelli v. Miller*, 7th Dist. No. 03 MA 60, 2004-Ohio-5123, ¶ 35, citing *Lehman v. Haynam*, 164 Ohio St. 595 (1956). "Indeed, '[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.' " *Flowers* at ¶ 13, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 86} Here, the trial court reviewed the transcript of the hearing before the magistrate and the magistrate's decision. The trial court summarized and discussed appellant's testimony at the hearing and considered the stated reasons given by the magistrate for disbelieving appellant. The trial court agreed with the magistrate. Contrary to the opinion expressed by the majority, I perceive no error in the magistrate's decision or the trial court's ruling on appellant's objections. The record shows that appellant was provided an opportunity to submit evidence in support of her claim that she did not engage in the contumacious conduct alleged in appellees' motion to show

cause. Appellant relied on her own testimony, and the trial court found her testimony "wholly implausible and belied by the documents presented at the hearing." (May 17, 2017 Decision at 4.) Clearly, the trial court made a credibility determination in reaching the conclusion it did.

{¶ 87} Nonetheless, the majority concludes the magistrate erred and the trial court abused its discretion in refusing to consider supplemental evidence submitted by appellant, pro se, on September 18, 2017.[18] The majority criticizes the magistrate for refusing to exceed the authority granted by the order of reference, failing to sua sponte reconsider the issue of appellant's liability for contempt, and failing to resolve the issue based on evidence submitted on the morning of the scheduled sanctions hearing. The majority then holds that the trial court acted unreasonably, arbitrarily and/or capriciously when it overruled appellant's objection alleging that the magistrate erred by failing to do so. In my view, it would have been manifestly unfair to appellees, and in contravention of Civ.R. 53, for the magistrate and the trial court to have proceeded in the manner suggested by the majority.

{¶ 88} Civ.R. 53(D)(4)(d), entitled "[a]ction on objections," provides as follows:

> If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. *Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.*

(Emphasis added.)

{¶ 89} Finally, though appellant referred to the evidence in the supplemental filing as "newly acquired information," there is no question that all the documents submitted by appellant on September 18, 2017 were created well prior to the February 8, 2017 evidentiary hearing before the magistrate and could have been produced by appellant at the hearing. (Appellant's Sept. 18, 2017 Notice at 1.) Thus, the record shows that the

---

[18] On April 3, 2017, the trial court granted the motion to withdraw filed by appellant's trial counsel and directed the parties to submit all future notices and filings to appellant, pro se.

supplemental evidence sought to be introduced by appellant as "newly acquired information" was not produced at the February 8, 2017 evidentiary hearing because of appellant's failure to exercise reasonable diligence in acquiring it, not because the magistrate prohibited appellant from introducing the evidence. In my view, it would have been unfairly prejudicial to appellees for the trial court to sua sponte reconsider appellant's liability for contempt based on appellant's supplemental evidence. *See* Civ.R. 53(D)(4)(d). Accordingly, I would hold the trial court did not abuse its discretion in refusing to consider the supplemental evidence.

{¶ 90} For the foregoing reasons, I would overrule appellant's assignments of error and affirm the judgment of the trial court. Because the majority does not, I respectfully concur in part and dissent in part.

———————————